IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | |
|---|---|
| MAUREEN BAIR and ROBERT BAIR, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Case No. 07-4243-CV-C-NKL |
| ) | |
| ATLANTIS LLC, MARK KELLY, and ) | |
| KERNENE SHICKLER, ) | |
| ) | |
| Defendants. ) | |

O R D E R

Plaintiffs Robert and Maureen Bair have sued Defendants Atlantis Island, LLC, Mark Kelly, and Kernene Shickler for their actions in connection with the sale of a condominium in the Atlantis Island development in Miller County, Missouri. Plaintiffs' First Amended Complaint includes a claim under the Interstate Land Sales Full Disclosure Act, 15 U.S.C. §§ 1701–1720, as amended (the "Act" or "ILSFDA"). Pending before the Court are Plaintiffs' "Motion for Interlocutory Partial Summary Judgment" [Doc. # 52], and a related Motion to Strike [Doc. # 55]. Plaintiffs seek a determination that the provisions of the Act are applicable to the transaction at issue in this case. For the reasons stated herein, the Court grants Plaintiffs' motion for partial summary judgment and denies their motion to strike.

**I.      Facts**

The Atlantis Island Condominium development currently consists of 90 condominium units, and in the future may consist of as many as 240 units. (Pls.' Sugg. in Supp. 2, ¶ 3; Def.'s Sugg. in Opp'n 2, ¶ 3). Defendant Atlantis, LLC has disseminated sales material throughout the United

1

States and has used interstate commerce in the sale of its condominium units. (Pls.' Sugg. in Supp. 2, ¶ 4; Def.'s Sugg. in Opp'n 2, ¶ 4). On January 30, 2007, Plaintiffs Maureen and Robert Bair signed an agreement to purchase a condominium unit from Defendant Atlantis, LLC. (Pls.' Sugg. in Supp. 2, ¶ 6; Def.'s Sugg. in Opp'n 2, ¶ 6). Plaintiffs paid Defendant $1,000 on that date, and in March 2007 paid an additional $10,000. (Pls.' Sugg. in Supp. 2, ¶¶ 6–7; Def.'s Sugg. in Opp'n 2, ¶¶ 6–7).

The January 30, 2007 purchase agreement stated that the condominium unit would be completed on or before the "closing date," and stated that a "closing letter" would be sent to Plaintiffs which would specify the "closing date." (Def.'s Sugg. in Opp'n 2 ¶¶ 3–5). A closing letter was subsequently mailed to Plaintiffs, which stated that the closing date would be September 28, 2007. (Def.'s Sugg. in Opp'n 2 ¶¶ 3, 6). Plaintiffs refused to close and subsequently asked for a refund of the $11,000 they had paid to Defendant. (Pls.' Sugg. in Supp. 3, ¶ 8; Def.'s Sugg. in Opp'n 3, ¶ 8). Defendant refused to refund Plaintiffs' money. *Id.*

Defendant never registered the Atlantis Island development with the U.S. Department of Housing and Urban Development ("HUD"), and never provided a statement of record or property report to Plaintiffs. (Pls.' Sugg. in Supp. 3, ¶¶ 9–10; Def.'s Sugg. in Opp'n 3, ¶¶ 9–10). Defendant denies that it was required to take these actions under ILSFDA. (Def.'s Sugg. in Opp'n 3, ¶¶ 9–10).

**II.     Discussion**

    **A.     Summary Judgement Standard**

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P.

56(c). The moving party "bears the initial responsibility of informing the district court of the basis for its motion," and must identify "those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). If the moving party satisfies its burden, Rule 56(e) requires the nonmoving party to respond by submitting evidentiary materials that designate "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986). In determining whether summary judgment is appropriate, a court must look at the record and any inferences to be drawn from it in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). Summary judgment is not proper if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 248.

### B. The Interstate Land Sales Full Disclosure Act

The Interstate Land Sales Full Disclosure Act, 15 U.S.C. §§ 1701–1720, as amended (the "Act" or "ILSFDA") was enacted "to insure that [buyers], prior to purchasing certain kinds of real estate, [are] informed of facts which will enable [them] to make an informed decision about purchasing the property." *Pigott v. Sanibel Development, LLC*, No. 07-0083-WS-C, 2008 WL 4254479, *5 (S.D. Ala. Sept. 17, 2008) (internal quotation omitted). ILSFDA makes it unlawful for a developer or agent engaged in interstate land sales to sell or lease any lot: (1) without first filing a "statement of record" with HUD; (2) without providing a "property report"[1] to the purchaser before

---

[1]The property report "is an extensive disclosure that must include such information as, *inter alia*, identification of interested persons; a legal description of the subdivision; a statement of the condition of title to the land; a statement of general terms and conditions (including the range of selling prices); a statement of the present condition of access to the subdivision, existence of unusual conditions relating to noise or safety, availability of sewage disposal and other public utilities, proximity to nearby municipalities, and the nature and completion schedule for proposed improvements; statements relating to any blanket encumbrances; and such other information

3

they sign any contract or agreement; (3) where the statement of record or property report contain untrue statements of material fact or omit to state certain material facts required by other provisions of the Act; and (4) where the developer has "display[ed] or deliver[ed] to prospective purchasers or lessees advertising and promotional material" inconsistent with the information in the property report. 15 U.S.C. § 1703(a)(1)(A)–(D). Where a property report is not furnished to a purchaser before the signing of a contract or agreement, the Act gives the purchaser the right to revoke that contract or agreement within two years after the date of the signing. 15 U.S.C. § 1703(c). When a purchaser revokes under § 1703(c), the purchaser is entitled to "all money paid by him or her under such contract or agreement." 15 U.S.C. § 1703(e).

Defendant has admitted that it "used interstate commerce in the sale of Atlantis Island Condominiums." (Def.'s Sugg. in Opp'n 2, ¶ 4). It further admits that no statement of record has been filed with HUD and that no property report was provided to the Bairs. (Def.'s Sugg. in Opp'n 3, ¶¶ 9–10). Finally, it admits that the Bairs paid it $1,000 upon signing a purchase agreement on January 30, 2007, that they paid an additional $10,000 in May of 2007, and that Defendant refused the Bairs' request of an $11,000 refund on September 29, 2007. (Def.'s Sugg. in Opp'n 2, ¶¶ 6–8). Defendant argue that it is exempt from the Act's requirements, while Plaintiffs argue it is not. If the development is not exempt, Defendant is in violation of the Act's requirements, and Plaintiffs are entitled to recover under 15 U.S.C. § 1709.[2]

---

as the Secretary of HUD might require as reasonably necessary or appropriate for protection of purchasers." *Pigott*, 2008 WL 4254479 at *5 (citing 15 U.S.C. §§ 1705, 1707).

[2] § 1709 provides that:

"[a] purchaser or lessee may bring an action at law or in equity against a developer or agent if the sale or lease was made in violation of section 1703(a) of this title. In a suit authorized by this subsection, the court may order damages, specific performance, or such other relief as the court deems fair, just, and equitable. In determining such relief the court may take into account, but not

4

ILSFDA contains many exemptions, but the Court will discuss only the three argued by Defendant. The Act fully exempts from its requirements (1) "the sale or lease of any improved land on which there is a residential, commercial, condominium, or industrial building" and (2) "the sale or lease of land under a contract obligating the seller or lessor to erect such a building thereon within a period of two years[.]" 15 U.S.C. § 1702(a)(2). The Act also provides a partial exemption – from its registration and disclosure requirements – for subdivisions containing fewer than 100 lots, exclusive of lots exempt under subsection (a). 15 U.S.C. § 1702(b)(1). For the purposes of the Act, a condominium unit is considered a "lot." 24 C.F.R. § 1701(b). Because the number of lots in a subdivision exempt under subsection (a) of section 1702 bears on the applicability of the 100-lot exemption under subsection 1702(b)(1), the Court will address Defendant's claims of exemption under subsection 1702(a) first.

### 1. The Improved Lot Exemptions of § 1702(a)(2)

It is clear that the transaction at issue in this case does not qualify for exemption under either of the § 1702(a)(2) exemptions. The condominium sold to the Plaintiffs was not completed at the time the contract was entered into (Def.'s Sugg. in Opp'n 3, ¶ 2), so the exemption for lots on which there exists a completed condominium is inapplicable.[3]

---

be limited to, the following factors: the contract price of the lot or leasehold; the amount the purchaser or lessee actually paid; the cost of any improvements to the lot; the fair market value of the lot or leasehold at the time relief is determined; and the fair market value of the lot or leasehold at the time such lot was purchased or leased."

15 U.S.C. § 1709(a). In addition, the purchaser may recover "interest, court costs, and reasonable amounts for attorneys' fees, independent appraisers' fees, and travel to and from the lot." 15 U.S.C. § 1709(c).

[3] For purposes of determining whether the 100 lot exemption applies, the Defendant states that Atlantis Island currently consists of 90 units, and that 54 of these units have been completed and are ready for occupancy but have not yet been sold. (Def.'s Sugg. in Opp'n 5, 9). Defendant therefore concludes that these 54 completed units qualify for an exemption under §1702(a)(2). Because the Court finds below that Defendant's sale to Plaintiffs does not qualify for the 100-lot exemption even if Defendant is correct that these 54 units are exempt under § 1702(a)(2),

5

Furthermore, the transaction at issue in this case does not qualify for the exemption under § 1702(a)(2) – sales under a contract obligating the seller to erect a building on the land within two years. The contract to build the condominium did not obligate Defendant to erect the condominium within two years of January 30, 2007, the date the contract was signed (Def.'s Sugg. In Opp'n 3,¶2). Paragraph 14 of the purchase agreement, executed by the Bairs on January 30, 2007, stated that the condominium unit would be completed on or before the "closing date." (Def.'s Sugg. in Opp'n 5, 11). The purchase agreement also states that a "closing letter" would be mailed to the Plaintiffs to "apprise [them] of the closing specifics," including the closing date. Such a closing letter was sent to Plaintiffs on September 20, 2007, notifying them that closing on the unit would occur on September 28, 2007. (Def.'s Sugg. in Opp'n 11). Defendant argues that the September 20, 2007 closing letter was incorporated by reference into the purchase agreement executed on January 30, 2007, and that, therefore, the purchase agreement obligated Defendant to complete the condominium unit by September 28, 2007, less than two years after the execution of the purchase agreement. *Id*. Defendant's position is untenable. Paragraph 25 of the purchase agreement states:

> You will receive (in the mail) a closing letter and warranty document from our office approximately two weeks before the closing of your new condominium. (Please advise your Sales Agent of a change in address, as it is very important you receive all of those papers). Your closing letter states places and/or people you will need to contact in order to tie everything up before you close. It will also inform you of the day and time of your walk-thru.

(Def.'s Sugg. in Opp'n Ex. 1 ¶ 25). Absent from this provision is any obligation to send the closing letter by a specific date. Thus, the contract basically provides that the unit must be completed within two weeks of whatever date Defendant chooses to send the letter. The fact that the Defendant

---

the Court assumes without deciding the 54 units qualify for the independent exemption cited by Defendants.

decided to complete the unit within two years of execution of the purchase agreement does not mean that the agreement obligated Defendant to do so. Under this contract, Defendant could have sent the closing letter in February 2009. § 1702(a)(2) requires an unconditional commitment to complete a unit within two years, and the purchase agreement in this case does not contain such a commitment. *See generally Nargiz v. Henlopen Developers*, 380 A.2d 1361 (Del. 1977).

### 2. The 100-Lot Exemption of § 1702(b)(1)

Defendant also argues that it is exempt from the Act's disclosure and registration requirements under the Act's partial exemption for subdivisions containing fewer than 100 lots, exclusive of any units exempt under § 1702(a). 15 U.S.C. § 1702(b)(1). The Act defines a "subdivision" as land which "is divided or is proposed to be divided into lots, whether contiguous or not, for the purpose of sale or lease as part of a common promotional plan." 15 U.S.C. § 1701(3). A "common promotional plan" is a:

> plan, undertaken by single developer or group of developers acting in concert, to offer lots for sale or lease; where such land is offered for sale by such a developer or group of developers acting in concert, and such land is contiguous or is known, designated, or advertised as a common unit or by a common name, such land shall be presumed, without regard to the number of lots covered by each individual offering, as being offered for sale or lease as part of a common promotional plan.

15 U.S.C. § 1701(4). Therefore, for the purposes of the 100-lot exemption, the relevant number is not the number of units currently in existence, as Defendant contends,[4] but rather the number of units subject to a common promotional plan. *See Grove Towers, Inc. v. Lopez*, 467 So. 2d 358 (Fl. Dist. Ct. App. 1985).

---

[4] Defendant argues that because only 90 units have been constructed thus far, the entire development qualifies for the 100-unit exemption. (Def.'s Sugg. in Opp'n 9).

Defendant does not dispute that its advertisements state that Atlantis Island Condos will consist of more than 200 units when completed, that it owns the land on which the additional units would be constructed, or that "Atlantis Condominium development may at some future point contain as many as 240 condominium units[.]" (Maureen Bair Aff.¶¶ 3–4; Robert Bair Aff. ¶¶ 3–4; Def.'s Sugg. in Opp'n 2, ¶ 3). Plaintiffs' Statement of Uncontroverted and Material Facts states, in part, that "The Atlantis Island Condominiums development, when finished, will consist of: a) 240 condominium units . . ." (Pls.' Sugg. in Supp. 2, ¶ 3). Defendant does not specifically deny this allegation; rather, it asserts that the development may at some future point contain 240 units, but denies that it currently contains more than 90 units. (Def.'s Sugg. in Opp'n 2, ¶ 3).[5]

Because there are 240 units in the common promotional plan, Defendant would have to show that 141 of these units will qualify for exemptions under the Act in order for the transaction at issue in this case to qualify for the 100-lot exemption. Even assuming that Defendant is correct that 54 of its current units are exempt under § 1702(a)(2), the common promotional plan would still contain 186 non-exempt units. Defendant has provided no evidence that sales of these 186 units will qualify for exemptions under the Act. Therefore, the transaction at issue here is not exempt under the 100-lot exemption of § 1702(b)(1).

---

[5]While the presumption under § 1701(4) is rebuttable, Defendant provides the Court with no undisputed material facts in rebuttal. Thus, the Court presumes that the Atlantis Island development will contain as many as 240 units. This number, and not the number of units currently in existence, is the number relevant to the Court's determination under § 1702(b)(1). If the Court were to accept Defendant's argument that the relevant number was the number of units currently in existence, the "common promotional plan" language in § 1701 would be of little or no effect, and developers planning to build subdivisions of more than 100 units would always be exempt until more than 99 units were actually completed.

Because none of ILSFDA's exemptions apply, Defendant is liable to Plaintiffs under the Act. Plaintiffs requested only that the Court find that the Act applied to the transaction at issue in this case; the Court makes no finding as to damages.

## III. Plaintiffs' Motion to Strike

Also pending before the Court is Plaintiffs' Motion to Strike [Doc. # 55]. Plaintiffs move the Court to strike from the record, statements in Defendant's Response to Plaintiff's Statement of Material Facts and Suggestions in Opposition to Plaintiff's Motion for Interlocutory Partial Summary Judgment. [Doc. #53]. Plaintiffs argue that Defendants' statement that ". . . Plaintiffs failed to appear for and testify at their duly noticed deposition" is scandalous under Rule 12(f) of the Federal Rules of Civil Procedure, in that it "implies a lack of respect for the judicial system and a flaunting of the federal rules" on the part of both Plaintiffs and Plaintiffs' counsel.

Rule 12(f) motions are "extreme and disfavored measure[s]." *BJC Health System v. Columbia Cas. Co.*, 478 F.3d 908, 917 (8th Cir. 2007) (citing *Stanbury Law Firm, P.A. v. IRS*, 221 F.3d 1059, 1063 (8th Cir. 2000)). Plaintiffs' basic claim appears to be that Plaintiffs did in fact appear at a noticed deposition, and that Defendants are aware of this fact. Plaintiffs had an opportunity in their reply brief to dispute the accuracy of any statements made in Defendants' response brief if they wished to do so, and the complained of statements do not rise to the level of "scandalous." Plaintiffs' Motion to Strike is denied.

9

**IV. Conclusion**

Accordingly, it is hereby

ORDERED that Plaintiffs' Motion for Interlocutory Partial Summary Judgment [Doc. # 52] is GRANTED. The Interstate Land Sales Full Disclosure Act applies to the transaction at issue in this case. The Court makes no finding as to damages. It is further

ORDERED that Plaintiffs' Motion to Strike [Doc. # 55] is DENIED.

s/ NANETTE K. LAUGHREY  
NANETTE K. LAUGHREY  
United States District Judge

Dated: November 20, 2008  
Jefferson City, Missouri